Case number 11-1509, Fireman's Fund Insurance at all versus Paul A. Coghlan at all. Would the lawyers please approach and introduce yourselves. You know, we have four cases today, so we're going to have to watch the clock a little more than we normally do. Good morning. Brad Skafish on behalf of the plaintiff's appellant. Good morning, Your Honor. Paul Coghlan on behalf of the appellant. Okay, the appellant understands you have to reserve some time for a moment. Okay. Okay, please proceed. Thank you. May it please the Court. Counsel, as I stated, I represent the appellants, the plaintiffs in this case. As I believe the panel is aware, this case stems from an underlying workers' compensation case in which a company called SET, or Set Environmental, had a workers' compensation case with its employee, Angel Beltre. SET Environmental was insured by Fireman's Fund. Fireman's Fund, in turn, retained Cottingham & Butler and its wholly-owned subsidiary, Self-Insured, to act as third-party claims administrators. Cottingham & Butler and Self-Insured acted in lockstep, and with the permission of the Court, I will do as we've done in our brief and you can just refer to them as C&B for a little bit of brevity. C&B retained defense counsel or respondent's counsel in the comp case, who is the defendant in this case, to represent their interest for SET Environmental in Mr. Beltre's workers' compensation case. Eventually, penalties were awarded to Mr. Beltre, totaling around $170,000, and that amount was ultimately compromised down to $80,000. It's been our position all along that those penalties, in any amount, were unnecessary and stemmed from the failures. Let's say they were unnecessary or unwarranted in any amount. How do you explain the compromise, $80,000? Someone, the arbitrator or the commission, someone thought that it shouldn't be reduced to zero because there was some reason for those penalties to be imposed, whether it was nonpayment of all the medical bills or delayed temporary disability payments. Well, our position has been that that's because Mr. Coughlin failed to ever produce I just don't buy that. I don't buy that because it's like a claim that the evidence wasn't sufficient. Don't you have the equivalent of post-trial motions? You can go in there and say, hey, the evidence wasn't properly brought in, and here's the real evidence. But that real evidence wasn't as conclusive as you make it out to seem. Well, the compromise did lower the amount to less than half the original amount, but I think that's getting away from the point that, respectfully, that would go to proof on the facts in the underlying case, and this appeal stems from a dismissal of the pleading. Well, you don't have a basis for malpractice unless you can establish malpractice, and you don't have a basis for malpractice if there was any reason for the event to have occurred as it occurred. Right. And the question is, was there any reason for at least the compromise amount to be imposed? And if there was reason, then you're pointing your finger at the wrong individual. We believe there was no reason for any amount to have occurred, and that that compromise is the nature of mitigation of damages. Well, what did the lawyer do, Rob? He failed to submit proofs of payment. Where were those proofs coming from? Who had the proofs that you say should have been submitted? He had the proofs, as well as my clients, and they weren't brought out at a hearing, so it appeared that certain payments hadn't been made, as I'm sure the panel is aware. Through the various pleadings, we've tried to assert that in a way that best represents the client's interest, both initially it was for failure to bring out the check stubs that would have shown that, and after one of the court orders, an amendment was made to allege that the bills themselves needed to have been brought out. Didn't the circuit court say that much of that evidence that you believe wasn't introduced was, in fact, introduced, or at least before the arbitrator or the commissioner? The court found that the actual check stubs would have been produced anyway, but the medical bills themselves then became the issue in the final pleading. But you brought up check stubs just now. I'm just trying to be open with the panel that it has been alleged in multiple ways in an attempt to best put forth the case. Were the check stubs before the commissioner or not? The check stubs were referenced in other itemizations. I don't believe the actual check stubs were put forth, but what the court may have found is to be adequate proof would have been there. But the bills themselves would have shown dates that would have affected, we believe, the arbitrator's decision on whether or not these bills were, in fact, timely paid. Who pays the medical bills? Was it C and B? It certainly isn't counsel. No, it's not counsel. The bills get paid through a fireman's fund through the third-party administrator, which was C and B, as a result of the rulings made by the commission. And were those medical bills forwarded to the lawyer? Yes. Is that in the record? I believe it is. Again, I feel like we're getting away. This is a factual issue. That's something we would have had an opportunity to prove at the trial court level had the pleadings been upheld and a concern to get away from the legal issues, which were, in fact, the reason why we're here today. Well, there was a proceeding before the industrial commission, was there not? Yes. And there was an arbitration and an award, and then there was a review before the commission, was there not? There was, but that was ultimately compromised because you had one side sticking to a $170,000 penalty and another side saying there shouldn't have been any penalties. Yes, but a review is more or less like an appeal, and you could bring in additional evidence in a review. Yes. I mean, didn't Fireman's Fund realize after they received the arbitration award that there was something missing and they'd have the opportunity to present that type of evidence on review, would they not? Their concern was that that had not been done in a timely fashion by their counsel and that they may have been deemed by the commission to have waived that right and been stuck with the penalties, and that's why they ultimately found it prudent to enter into a compromise at less than half of the original amount of the penalties. Okay. So what your theory is that they were worried about the fact that maybe the commission would not consider that evidence, so therefore they compromised it at that point in time. Correct. So you're saying that the malpractice occurred at the arbitration level, and of course it could have been cured at the review level. Well, or it may not have been cured at that level. I said it could or could not have. In the interest of mitigating their damages, they made a decision. Okay. Okay. So what about the malpractice action? Are you believing that it was properly assigned or transferred? Yes. You know, we've cited in our brief that there's a general rule under the Clement holding that stating that sound public policy prohibits the assignment of legal malpractice claims since an assignee would be a stranger to the attorney-client relationship, was owed no duty to the attorney, and suffered no injury. It's made clear by the Learning Curve case that that is just a generality, but on the three points there, an assignee would be a stranger to the attorney-client relationship. In this case, the assignee, C and B, was not a stranger. In fact, they were more intimately involved as the ones who had selected the counsel than was fireman's fund. They were owed a duty by the attorney as they were the employer of the attorney. They did suffer an injury as they bore the brunt with fireman's fund of the compromised amount down to the $80,000. So just on the public policy reasons stated by the Clement case, those concerns are not triggered in this case, and even if there hadn't been the Learning Curve case, I think it would have been clear that that holding didn't apply to the facts of this particular assignment. But then if you get to the Learning Curve case, it stands for a rejection of that type of a per se rule, that in any case there can't be an assignment of a legal malpractice case. They cite to a couple of cases out of the state, the Cerberus Partners case, which was the Rhode Island case. That involved a financial institution purchasing rights to a loan from a lender. Only the loan was bought. There was still another party out there, but the court found that the purchaser could obtain the rights and obligations that go along with the loans. Therefore, the end result is a separate company ends up with an interest in the outcome of a claim, and the court found that under those circumstances it makes sense to permit an assignment of the claim. The court also cited Richter, which is a District of Columbia case where there are... So you're making clear to us that this would be a case of first impression in Illinois if we were to rule according to what you're asking us to do. I don't think so exactly. You're citing foreign cases, aren't you? Learning Curve cites those, and Learning Curve itself rejected a per se rule on some of the rhetoric that had been raised in other foreign cases. Why do you think per se rules shouldn't apply in this case? Because in this case... And then you're relying on the foreign cases to explain why, aren't you? Oh, I'm just explaining that it's logic that was adopted by the Learning Curve court, which is an Illinois case. Let me ask you this. If we were to reject your position, how would that impact counts two and three? I don't think it should impact counts two and three. While we steadfastly don't believe that the assignment should affect count one, if that ruling were to stand, it was still improper to dismiss counts two and three as they could stand alone. They weren't, as I imagine my opponent would argue, ancillary claims that only survived on the basis of the legal malpractice claim. What were they based on if it wasn't the legal malpractice? Count two is a claim for implied indemnity. Based on what? Based on the conduct of counsel. I understand that might also satisfy the elements of legal malpractice, but that's not a unique creature in Illinois law where one action or inaction might satisfy the elements of multiple torts or other actionable wrongs. In this case, we've cited Fraser for the theory that implied indemnity is a situation where the indemnity, without fault in fact, is subjected to liability based on a pre-tort relationship. We pled the pre-tort relationship. That is deemed true. It's contested. What was the relationship, pre-tort? Employer-employee. And you have another case where hiring a lawyer renders that lawyer an employee and the person that hired that lawyer an employer? Yes. I believe that's under the Rogers holding and it may have been under one of the other holdings we cited later. Isn't he an independent contractor as opposed to an employee? How could he be an employee? For the purposes of the transaction, he is employed. I think that's getting into distinctions that might be applicable in other areas of law, whether he's an independent contractor or an employee, but he's employed for that transaction. I think you ought to stay away from employee and employer here. A lawyer is not an employee. Okay. He's retained, if I may use that term, and there is an obligation to the party you're retained by to act competently and in good faith. And if you don't act competently, what would flow from that? Malpracticing? Among other things. We've pled three counts because we believe three causes of action are sustained here. Plied indemnity is a separate cause of action with separate pleading elements, which have been pled. Who's the party in Count 1? All the plaintiffs, which are Fireman's Fund, Cottingham and Butler. Why do you need Fireman's Fund? Fireman's Fund has a stake in this case. Now, they may have assigned away their rights to recovery, but they have so put, but I thought you were saying that all three parties had, there was a duty that flowed from the lawyer to all three parties, and if there's a duty to all three parties, why does Fireman Fund even need to be in the case? Because the duty flows to the other two as well. I actually agree with you. I think the duty does flow to all three. I think the case could have been pled without Fireman's Fund. That doesn't make it improper to have also included Fireman's Fund. They have a legal right of recovery against the defendants, even though they may have assigned away the monetary value of that to Cottingham and Butler. What was the monetary value? It was $80,000. What was C&B's portion of that? What is C&B out of it? Well, between the two of them, they divided that $40,000 and $40,000. I think they each have a joint right to the $80,000 of recovery from the defendants. How's that? They were both wrong. The defendants' actions were their actions. So Fireman's Fund wants to give up its $40,000 to C&B and just call it a day? Yeah, that's what you're saying. You're saying that C&B, if it collects, it's going to collect all $80,000, right? Right. In exchange for an agreement to pay the $40,000 up front by Cottingham and Butler, they allow Cottingham and Butler to take whatever proceeds may ultimately flow from the litigation. That doesn't take away their legal right outside of that contractual agreement to collect from a defendant that they've been wronged by. All right. It might be a good idea to reserve some time for rebuttal. Okay. Do I have five minutes left at this point? Right. Okay. Let me just try to tie up a couple of points, and I'll save the rest for rebuttal. There are some arguments made by the defense that the dismissals could have stood as a sanction. Well, they didn't move for dismissal on that ground. They moved for sanctions on other grounds, and those were denied. And they moved for dismissal on the basis of the assignment being improper under Illinois law, which the court adopted that argument. So at this point, for them to invent separate grounds I think is improper, and that argument has to be rejected. As to their claims that it was error by the court to deny their motion for sanctions, that's within the discretion of the court. The court certainly may have found that dismissal of the action itself was adequate under the circumstances, and there's no basis for an argument that there's been some abusive discretion here in a non-awarding of sanctions. The court could have easily found that even if something was done incorrectly, it didn't warrant additional 137 sanctions. So in conclusion, I would ask the court to reverse the decision as to the dismissal of the Second Amendment complaint and affirm the decision with regard to the denial of sanctions. Thank you. May it please the court, counsel. Paul Coghlan on behalf of the appellees. I'm going to start with his last point first because that's easier. It's a little fresh in my mind. Judge O'Hara, who exercised the patience of a saint in dealing with this case, as did Judge Quinn before him, adopted all issues, it's clear in the order, all issues as set forth. He agreed with all issues as set forth in defendant's brief, including the findings as to issues. It's true that he did deny the sanctions. However, it's clear in the order that he adopted all issues, and that was the fact that there was an active concealment of the assignment and the pleading subsequent to the initial pleading, the refusal to produce the assignment, discovery. You know, we're playing all these cat and mouse games. This is going on for months and months and months and months. And then finally, what could have been easily decided, he could have adjudicated the assignment issue originally, but instead we find out months later that Fireman's Fund really isn't in the case. They just changed the pleadings. It's like me trying to sue somebody else's wife for divorce, and then we find out I don't have standing, so I change the pleadings to put his name in. Except by the time that the pleadings were changed, the assignment had been tendered to you, so you know that there was an assignment? Well, by that time, the case had been dismissed on the merits a couple of times, on the fact that, as you pointed out, all the evidence they complained that I made a big mistake on was already in the record in other forms. The check stubs. It couldn't have been all the evidence. Everything that, actually, everything was in there. The bills, the pay stubs. There's nothing that they've brought. That's the funny part. There's nothing that they've brought up yet that wasn't in the record. Well, let me ask you this. Was there a basis to impose the penalties? I don't think so. I think they made a huge mistake by not exhausting their administrative remedies. You have got the Reynolds case directly on point. What happened is the arbitrator did not like Dr. Milgram's opinion, did not think Dr. Milgram was credible. In fact, she never disclosed the fact that she had this bias against Dr. Milgram. So rather than appeal, rather than say, Well, let me ask you a question. Doesn't all the arbitrators feel that way about Dr. Milgram? Well, I don't know. I don't know about that. But it's clear that the courts have never got into that, and they've never started down that road where some doctors you can rely on, some you can't. And that's what the Reynolds case basically stands for. And, again, look at this $80,000. Who came up with this $80,000? Why not $70,000? Why not $120,000? Why not make the whole award disputed penalties? It's just a made-up number that they put on the contract. So that's their damages. They decide to exhaust the appeal. Rather than pay for an appeal and get the whole thing thrown out, they instead come up with this figure, which is twice whatever the amount is. But the circuit court didn't actually rule according to what you've just explained to us. Both judges ruled that the assignment was improper and that the other two counts flowed from the same cause of action in count one. Actually, Judge, the assignment is not in this complaint. What the case was dismissed for was the fact that the assignment wasn't put in there. Then we did get, to a certain extent, a little bit of a preemptory, you know, that it came out because I'm like, and even if it was in, it's not enforceable. That's what I put in my motion. So we did cover that. However, it's not in there. That's why I put it in my reply brief. The funny thing is, the relief they're asking for, what they're asking the court to do now is since they didn't plead the assignment, in fact, they actively concealed it, what they're asking the Illinois appellate court to do is give them a chance to, number five, this would be the fifth complaint. The fifth complaint. They want you to say this was an abuse of the trial court's discretion and we should send this case back and allow them to replead for a fifth time. And why? Because they concealed the assignment that Judge Quinn told them to set forth with more particularity when this issue was first brought up, months into this case. Then I don't understand how the circuit court could rule the way it did. If it ruled that the malpractice suit belonged only to fireman's fund and the fireman's fund is not in the case, then, therefore, the case can't go forward. But if you're saying that there was no assignment and it's not before the court, how did you get to the malpractice to begin with? Because they don't have standing to sue me for malpractice. So even if they repled and said that they obtained standing by virtue of an assignment, that you can't assign it. So that's the basis it was dismissed. And that's an appropriate basis. They don't have to have them come back and replead at this time. Because the way you've just described it before I asked the question, it sounded more like a sanction where they didn't comply with the court orders. Could have been. But it makes a difference. I think to me it's six on one hand or half a dozen on the other, whether it's a sanction or whether it's a dismissal on the merits. We don't review multiple choices. We review based on the record. And that's the question. What does the record reveal? I think the record reveals that they did not have standing. So the case was dismissed on that basis. I think the record also revealed that they actively engaged. Let me stop you right there. So you're saying that based on the record, the only parties that were properly before the court were C and B because Fireman's Fund never demonstrated how Fireman's Fund could be in the case. Look at the briefs that were filed in this case. I've been to the appellate court many times. I've never seen a party in a separate part on a pleading. We have Fireman's Fund up at the top.  So you can have standing. To me, I think that's a fraud on the court. And I think that is, their case should be dismissed under that Santiago case as a sanction. Is that part of what the court, the circuit court, was that within his discretion? Absolutely. That's not the question. The question is, is that what the judge did? Again, he adopted, since he adopted all issues as set forth in defendant's motion to dismiss, I did. Yeah, and that's the problem. If you write an order that simply says everything that we said, and you're saying a lot of alternative bases to dismiss the case, how do we know which of these really applies? And I question whether they all really apply. I think they all apply. I think they all apply. Let me say it this way. A circuit court judge doesn't do more work than is necessary. If you have five grounds to dismiss, judge finds ground one adequate, he stops there. Why go on to two, three, four, five? And that's the problem with the order that you're asking us to review. It doesn't say that, you know, ground one was sufficient to permit dismissal, and that's it. Well, again, I think all the grounds are sufficient to dismiss this case. There never was a client here. My client was the company and the insurance company. They changed third-party administrators like, you know, people change cell phone companies. I could have had a different third-party administrator at the beginning of the case than at the end of the case. They're nothing more than a vendor. The fact that they may have recommended me, number one, they never paid me, number two, about a month ago, I had a woman come over with her daughter who was arrested. The mother paid me. Is that in the record of this case, what you're talking about now? I think what's in the record is just taking the pleadings and looking at the pleadings in a way most favorable to the plaintiff. They weren't my client. All they were was a third-party administrator. There was never an attorney-client relationship between me and this company. Therefore, right there, they can't sue me. Where did your checks come from? Where did the checks come from? Fireman's fund. Okay. So, I mean, and whether they recommended me or even if they did pay me, that does not create an attorney-client relationship. Well, did they or didn't they pay you? They don't. All they do is process payments that they get from other people. So they don't pay me. The money comes either from a self-insured corporation or it comes from an insurance company. In this case, it would come from fireman's fund. In this case, it came from an insurance company. And did they pay you? Yes, absolutely. But, again, the case law, I think, is pretty clear as far as sanctions. There's no way you can look at these pleadings and say that these pleadings are not objectively false when it relates to that whole issue that came up with the assignment, the issue of injecting fireman's fund. A party that wasn't even involved in the case is now the recipient of an order from the circuit court saying there's no need to disqualify counsel from representing both fireman's fund and C&B. That's a fraud on the court. Fireman's fund wasn't involved in the case. There was no conflict because they weren't involved in the case. And now we have an order from the circuit court granting relief to a party that's not before the court. That really, as a lawyer and an officer of the court, that really bothers me. That really bothers me that somebody would go to that extreme. I don't see how you can allow that type of a fraud to be perpetrated on the court and not have some type of a sanction attached to that. And yet the circuit court did not sanction. That's true. As I said when I started out, and I have a lot of respect for Judge O'Hara, I like Judge O'Hara, he exercised the patience of the saints sometimes to my frustration on this case. And I'm not going to fault him for being that way. Although, again, I think that there should, as I said, when you engage in that type of a fraud on the court, I believe that there should be a sanction attached to that because if there's no sanction, what's to stop people from doing this all day long? Where do we draw the line? I think that it's important as a judge and as a lawyer to know who's on, who are the parties involved in the case. I think that's a basic thing. And if you allow somebody to create a straw person or a fictitious party involved in the case, particularly when it's done for an illicit purpose, such as to establish standing when you don't have it, there needs to be a sanction for that. All right. I think you made your point. Thank you. Okay. Rebuttal, you only have a couple minutes. Thank you. Responding to some of the arguments. Before you do that, let me ask you. In fourth amendment, the amended complaint, did you allege an assignment from Fireman's Fund to CB? There is not an assignment alleged in the most recent plea. Is there an assignment in the record? Yes. From Fireman's Fund to CB? It's alleged in the first pleading, which was subsequently amended, and it was provided to them, the actual assignment, and a discovery response, which lies in the face of counsel's argument that there was, quote, unquote, active concealment. You don't tell somebody about something if you're actively concealing it, and I think that goes back to the court. So the last complaint, the last complaint, and the only complaint that we really need to look at, you are saying that there is no assignment alleged. It doesn't allege the assignment. That doesn't mean that the assignment was concealed or kept from everybody. No, but it certainly gives us the framework for reviewing the adequacy of a Yes, and that's why we've mentioned in our brief that if it's the opinion of the court that the assignment should have been mentioned, then that's more in the nature of a 2615, and there should have been leave granted to just amend to include that. That wasn't the court's ruling, and, again, it is a little convoluted because Mr. Cogman wrote the briefs and then wrote the order. Did you file a motion to reconsider? I'm not certain of a motion to reconsider. I don't think a motion to reconsider was filed. Then the order stands the way it is and the record stands the way it is, and did you ask to file a new amended complaint? At the hearing, yes, but the hearing was dismissed or the complaint was dismissed with prejudice leading to this appeal. I guess my argument, which I may not have articulated, is that if the grounds are that it's legally dismissed because the assignment's improper, therefore the whole nature of what we're trying to allege can't be done, that's separate from saying you could have done this, but you failed to include the specific allegation of the assignment. Those are two separate things, and that was not the nature of his motion to dismiss, and if that's, in fact, the only pleading deficiency seen by the court, then it was improper to have dismissed this with prejudice. But that's not the grounds that the underlying court made its decision on. That's why I'm making that argument today. I don't think there was a need for rehearing on that issue because those weren't the grounds, but if he's going to argue today that we should have alleged that in the complaint, well, then the proper remedy would be to reverse with a leave to replead to include that because that's a minor problem that could be easily repaired. That goes, again, to something that counsel said, that the pleadings are objectively false and a fraud on the court. Again, I think the Santiago case helps us because it shows how far away we are from those types of circumstances where somebody uses a completely false name of a human being who doesn't exist and has used that for apparent improper purposes in the past, and that would be a legitimate fraud on the court. These are parties who were still involved. Fireman's Fund is the party who sustained the loss. They assigned part of their legal rights to the recovery away, but they're not a stranger to the transaction. They're not, as counsel referred to, a straw person or a fictitious entity. They're the real entity. They assigned away the rights to recoup money, but they were still involved. We've made phone calls to them and had conversations with Fireman's Fund in the litigation of this case because they are intimately involved and they do want to see the case resolved on behalf of the plaintiffs. They've just signed away their rights to actually take the money in the end, and I think that's a major distinction over a situation where somebody doesn't exist or is truly a stranger to the transaction. Okay. You're past your time at this point. Okay. Thank you. I want to thank both of you, and it's a very interesting case, and we'll take the case under advisement. Call the next case. Thank you.